UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GEORGE FRANKLIN                                  CIVIL ACTION

VERSUS

WOODGRAIN   DISTRIBUTION                    TRIAL BY  JURY

## COMPLAINT

## JURISDICTION AND VENUE

1.

Plaintiff invokes this Court's jurisdiction pursuant to  28 USC § 1331, 28 USC § 1343(4), 28 § 1367(a), and  29 §2617.

2.

The alleged unlawful employment practices occurred  within the Eastern District of Louisiana.

## PARTIES

3.

Plaintiff is a citizen of the United States and a resident of Tangipahoa Parish, Louisiana.  Plaintiff  was employed by defendant at all times relevant to the allegations set forth in this complaint.

1

4.

Defendant WOODGRAIN DISTRIBUTION ("Woodgrain") is a foreign corporation, believed to be domiciled in the State of Alabama.  Defendant employs more than fifty  employees. Defendant is engaged is supplying millwork to its customers nationwide.

## ALLEGATIONS OF FACT

5.

Plaintiff  was first employed by defendant on or about October 30, 2006 as a salesperson.   In the course of plaintiff's employment, plaintiff was assigned to service a number of Home Depot Stores within plaintiff's service area.

6.

On Wednesday, October 15, 2014, plaintiff was servicing the Home Depot Store Number  357 on Coursey Boulevard in  Baton Rouge, Louisiana.

7.

On this date, plaintiff was  squatting down  and adjusting display brackets for defendant's merchandise.  As plaintiff  began  to stand up, plaintiff lost plaintiff's balance.

2

8.

Plaintiff placed plaintiff's right leg behind him to catch plaintiff's balance to keep from falling.

9.

Once plaintiff placed plaintiff's right leg behind him, he felt an immediate pop in plaintiff's right knee that was very painful.

10.

Plaintiff tried walking it off but the pain was too intense. Plaintiff's knee began to swell.

11.

Plaintiff reported the accident to plaintiff's direct manager, Michael Boggs.

12.

Boggs told plaintiff to contact Medcor, an outside health management company.

13.

Plaintiff contacted Medcor and provided whatever information Medcor requested.

14.

Medcor referred plaintiff to  Total Occupational Medicine Clinic  in Baton Rouge, Louisiana("TMO").

15.

Plaintiff  was seen by a physician at TMO who examined plaintiff's right knee and told it possible could be a knee sprain.

16.

Plaintiff was put on crutches and placed on light duty and was told to keep his  right knee iced to reduce the swelling and given Mobic for pain. Plaintiff was told by the physician to come back in one week to be examined again.

17.

Plaintiff's manager recommended that plaintiff take vacation days for Thursday October 16th and Friday October 17th 2014, to see if plaintiff's knee would feel better and to return the next week on plaintiff's normal beginning work day of the week Tuesday October 21, 2014.

18.

On October 21, 2014, plaintiff  returned to work. The  pain and swelling  in plaintiff's knee had not diminished.

4

19.

When plaintiff returned to work, plaintiff was on  light duty as ordered by the physician.

20.

At this time, Woodgrain assigned plaintiff's manager to assist plaintiff carrying out plaintiff's regularly assigned job duties.

21.

This arrangement was  supposed to take some of the load off the plaintiff, but plaintiff was still  doing full duty work.

22.

On October 22, 2014 plaintiff returned for a  follow up visit at Total Occupational Medicine. The TMO  physician examined plaintiff's knee and saw that plaintiff's condition had not improved.

23.

TMO referred plaintiff to an  Orthopedic Specialist and continued plaintiff on light duty.

24.

On November 14, 2014,  plaintiff was seen by Dr. Larry "Chip" Bankston. Dr. Bankston ordered an MRI.

25.

The MRI was performed on December 9, 2014 at Medical Diagnostic Center, Covington, La.

26.

Plaintiff learned that the MRI showed that plaintiff had a torn Meniscus and that surgery would be necessary.

27.

The surgery was scheduled for January 6, 2015.

28.

At the end of December, 2014, plaintiff put in for vacation days for January 5-9, 2015, because plaintiff's wife was scheduled to deliver January 5th, 2015.

29.

On January 5, 2015, while plaintiff was at the hospital in the delivery room with plaintiff's wife, plaintiff received a call from plaintiff's Area Manager Michael Boggs.

30.

Boggs told plaintiff that he needed to speak with plaintiff about plaintiff's work schedule.

31.

Boggs told plaintiff that defendant would be  making some changes to the schedules of the employees.

32.

Boggs told plaintiff that plaintiff would  only be working three days a week, and that plaintiff would only be working one store a day.

33.

Plaintiff asked  Boggs  what was the reason for the change after eight years on the same job.

34.

Boggs said that he didn't know and that the orders came from the Regional Manager, Wayne Villafane.

35.

The change in schedule affected  plaintiff's pay and benefits. Plaintiff would now be paid on a per store basis rather than a per week basis.

36.

Plaintiff was the only employee impacted by the new system.

37.

On the morning of January 6, 2015 plaintiff went and consulted with Dr. Bankston and he stated that plaintiff's injury would require surgery and it was scheduled for January 26, 2015.

38.

At this time, Dr. Bankston placed  plaintiff on sedentary work.

39.

On January 6, 2015, defendant notified plaintiff that no sedentary work was available and that plaintiff would be on worker compensation.

40.

Plaintiff had surgery on January 26, 2015.

41.

Plaintiff was scheduled to begin physical therapy January 30, 2015.

42.

In physical therapy, plaintiff experienced  swelling in plaintiff's right calf muscle. Plaintiff sought treatment at an hospital  emergency room.

43.

One week later, Dr. Bankston referred plaintiff to  Vascular Specialist Center in Baton Rouge. An ultrasound was ordered and revealed a blood clot in plaintiff's calf.

44.

Plaintiff was treated by Dr. Olinde for the blood clot and plaintiff was taken off physical therapy due to the blood clot.

45.

Plaintiff was reevaluated on February 25, 2015. Dr. Bankston said that plaintiff could resume physical therapy.

46.

Plaintiff continued physical therapy and checkups by Dr. Bankston.

47.

Defendant sent plaintiff a letter stating that because plaintiff was off work over 12 weeks comp that defendant was converting plaintiff's health and dental benefits to COBRA.

48.

Plaintiff had to begin paying $751.44 a month in order to keep the benefits on plaintiff's family.

49.

On June 23, 2015, Dr. Bankston ordered a Functional Capacity Evaluation("FCE".

50.

The earliest date available for the FCE was August 4, 2015.

51.

Plaintiff took the test and reviewed the results with Dr. Bankston on August 24, 2015.

52.

Dr. Bankston told plaintiff that plaintiff could perform medium duty.

53.

The work plaintiff performed for defendant was considered medium duty.

54.

On August 25, 2015, plaintiff was plaintiff was released to return back to work.

55.

Defendant informed plaintiff that plaintiff would have to take a physical fitness test in order to return to work.

56.

Plaintiff took the physical fitness test on August 26, 2015 and passed the test.

57.

Defendant informed plaintiff that he could return to work, but that plaintiff's pay would be reduced from $859.19 a week to $394.00 per week.

58.

Plaintiff would not be eligible for any benefits. Plaintiff would not be paid mileage. Plaintiff's position would not be full-time but part time.

59.

Plaintiff was also informed that defendant had hired someone to service plaintiff's previously assigned stores.

60.

Plaintiff declined to return to work on the terms stated by defendant.

## FIRST CAUSE OF ACTION
## FMLA  VIOLATION

61.

At all the times described in this complaint, defendant was subject to the Family & Medical Leave Act, 29 USC 2611. ("FMLA").

62.

At all times alleged in this complaint, defendant was subject to the Family & Medical Leave Act, 29 USC 2611. ("FMLA").

63.

Plaintiff  was in the  category of persons protected by the FMLA because plaintiff was employed for more than twelve months by the defendant at the time the cause of action arose.

64.

Defendant interfered with and/or restrained plaintiff's FMLA protected right by failing to inform plaintiff of his  rights under the FMLA, and in other ways which will be discovered and presented at trial.

65.

The defendant violated the FMLA in on or more of the following ways:

1. Failure to notify employee of FMLA rights. (29 CFR 825.300-301).

2. Failure to notify employee that leave counted towards 12-week FMLA entitlement. (29 CFR 825.208(b)(1)-(b)(2).

3. Counting FMLA leave against the defendant's absentee policy for disciplinary purposes. (29 CFR 825.220(c).

4. Taking disciplinary action against employee for using FMLA leave. (29 CFR 825.220(c)).

5. Failure to grant leave to provide physical care or psychological comfort to a seriously ill family member.(29 CFR 825.116(a)).

6. Failure to reinstate a employee to same or equivalent position.

7. Terminating an employee during or at the conclusion of FMLA leave.(29 CFR 825.216).

8. Failure to grant FMLA leave because of a misunderstanding of what qualifies as a "serious health condition". (29 CFR 825.114).

9. Failure to request medical certification in writing and not giving employee at least 15 days to obtain medical certification. (29 CFR 825.305).

10. Failure to handle questions about the validity of a medical certification by guidelines set forth in FMLA regulations. (29 CFR 825.307).

66.

Defendant's  violation of the FMLA  has caused the plaintiff damage.

67.

 Plaintiff's damages are loss of earnings past, present and future, loss of benefits

past, present and future.

68.

Defendant  willfully violated the FMLA and is therefore liable for the

statutory penalty.

13

## SECOND  CAUSE OF ACTION
## LADEA VIOLATION

### 69.

Plaintiff was in the protected  group, was qualified to do,  and was doing the work in a satisfactory manner, and was subjected to adverse action because of defendant's violations of the Louisiana Employment Discrimination Law, **LSA-RS 23:323**.

### 70.

Defendant's adverse employment action against plaintiff was motivated by the following illegal acts:

a)  the defendant limited, segregated, or classified the plaintiff in a way that adversely affected the plaintiff's opportunities or status because of the disability of the plaintiff;

b)  the defendant utilized standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability, or     that perpetuate the discrimination of others who are subject to common        administrative control;

c) the defendant failed to make a reasonable accommodation to the plaintiff's        known physical or mental limitations.

14

71.

Plaintiff is entitled to compensatory damages, back pay, benefits, reinstatement, reasonable attorneys fees, interest and court costs as provided by **LSA- RS 23:325**.

## THIRD CAUSE OF ACTION
## LSA-RS 23:1361 VIOLATION

72.

Defendant was motivated to fire plaintiff because plaintiff had asserted a worker's compensation claim.

73.

Defendant violated LSA- RS 23:1361.

74.

Plaintiff is entitled to one year's salary and benefits for defendant's violation of the Louisiana Worker's Compensation Law.

## PRAYER FOR RELIEF

WHEREFORE plaintiff prays that this court:

(1)   Declare that the employment practices complained of are unlawful;

(2)   Permanently enjoin the defendant, its agents, officers, and employees from engaging in all practices found by this court to be in violation of the law;

15

(3)     Order reinstatement of the plaintiff, together with an award of all salary, benefits, seniority and all other employment emoluments plaintiff   would have received absent unlawful discrimination from date of termination  until time of trial; or

(4)     in lieu of reinstatement, that the court award:

      (a)     backpay from date of termination  to time of trial;

      (b)     front pay;

      (c)     future loss of earnings and/or past, present and future compensatory damages, general damages, and all other relief available pursuant to the law;

(5)     Order the defendant to make the plaintiff whole by paying  such monetary and non-monetary benefits in amounts to be proved at trial;

(6)     Retain jurisdiction over this  action to insure full compliance with the Court's orders, and require the defendant to file such reports as the Court deems necessary to insure compliance;

(7)     Order the defendant to pay plaintiff's costs and expenses and reasonable attorneys' fees as provided by law;

(8)     Award pre-judgment interest as provided by law;

(9)     Grant such other and further relief to the plaintiff as the Court deems          just and proper.

(10)     Grant a trial by jury.

HOGAN & HOGAN

/S/ *Thomas J. Hogan, Jr.*

_____

THOMAS J. HOGAN, JR., T.A.
Bar Roll No. 06908
P. O. Box 1274
Hammond, LA 70404
(985)542-7730
thogan48@bellsouth.net

Attorney for plaintiff

16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GEORGE FRANKLIN                                CIVIL ACTION

VERSUS

WOODGRAIN   DISTRIBUTION                  TRIAL BY  JURY


**DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury.


HOGAN & HOGAN

/S/ *Thomas J. Hogan, Jr.*

_____

THOMAS J. HOGAN, JR., T.A.
Bar Roll No. 06908
P. O. Box 1274
Hammond, LA 70404
(985)542-7730
thogan48@bellsouth.net


**PLAINTIFF WILL REQUEST DEFENDANT WAIVE SUMMONS**